## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

JAE HYUN PARK,                          )
                                        )
    Plaintiff,                          )
                                        )
    v.                                  )     CASE NO.
                                        )     **2:23-CV-0069**
E-TRADE FINANCIAL                       )
CORPORATE SERVICES, INC.                )
E-TRADE SECURITIES, LLC,                )
FINANCIAL INDUSTRY                      )
REGULATORY AUTHORITY, INC.              )
                                        )
    Defendants.                         )
                                        )

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

APR 17 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

### COMPLAINT

COMES NOW, JAE HYUN PARK, Plaintiff in the above styled action, and respectfully shows the Court as follows:

### PARTIES

1.  Plaintiff is a resident of Georgia and the owner of Meta Materials Torchlight Preferred Shares ("MMTLP") associated with Meta Materials, Inc. ("Meta"), a Canadian corporation listed in the American over-the-counter ("OTC") market and is traded publicly.

2.      MMTLP shares were offered by E-Trade Corporate Services, Inc. and

E-Trade Securities, LLC (collectively referred to as "E-Trade" or "Defendant"),

which provides institutional brokerage services including stocks and shares in the

OTC market.

3.      On or around November 15, 2022, Plaintiff purchased MMTLP shares

from E-Trade using Defendant's online platform, and continued to buy them

throughout early December 2022.

4.      Financial Industry Regulatory Authority, Inc. (referred to as "FINRA"

or "Defendant") is a private, non-profit self-regulatory organization ("SRO"),

under the supervision of the U.S. Securities and Exchange Commission ("SEC"),

and conducts day-to-day regulation of the national securities markets pursuant to

the legal authority delegated to it by Congress. FINRA does not directly sell or

offer securities to the public, but rather, regulates broker-dealers such as E-Trade

and oversees the national securities market such as NASDAQ, New York Stock

Exchange, and also oversees the OTC market to ensure compliance with FINRA's

rules, federal securities laws, and all relevant rules and regulations.

## JURISDICTION AND VENUE

5.      The federal judicial district identified in this Complaint has subject-

matter jurisdiction over this action pursuant to 28 U.S. Code § 1332 based on

diversity jurisdiction. Defendant FINRA is a Washington D.C. citizen. Defendant

E-Trade is a Virginia citizen. The amount in controversy exceeds $75,000.

6.     The federal judicial district identified in this Complaint has subject-

matter jurisdiction over this action pursuant to 28 U.S. Code § 1331 based on issue

arising out of federal law.

7.     FINRA maintain sufficient contacts with the State of Georgia by

regulating investors within the state. Defendant has a physical office in 303

Perimeter Center North, Suite 550, Atlanta, GA 30346.

8.     E-Trade maintains sufficient contacts with the State of Georgia by

offering its platform to residents of Georgia. Defendant has a physical office in

5565 Glenridge Connector, Suite 1900, Atlanta, GA 30342.

## **INTRODUCTION**

9.     Back in June 28, 2021, a company named Torchlight Energy

Resources, Inc. ("Torchlight"), which was an oil and gas exploration company,

merged with Meta and ceased to exist[1]. Although Meta has its own shares called MMAT stock ("MMAT") that is still publicly traded as of today, MMTLP was provided by Torchlight to its investors as a placeholder for a dividend, and issued to Torchlight holders MMTLP, which are Preferred Share Dividend, and was never intended to have been traded on the open market. Regardless of intention, MMTLP was traded on the open market and offered by broker dealers such as E-Trade and many others for available to purchase in the U.S. market.

10.     On November 23, 2022, Meta Materials announced its board had approved the corporate action to issue distribution to MMTLP shareholders 100% common stock of its subsidiary, a private company named NextBridge Hydrocarbons ("NextBridge"), and shareholders of MMTLP would receive NextBridge shares on a 1:1 ratio.[2] Additionally, it was planned for MMTLP to be deleted and spun out as it transitioned to NextBridge, according to the S-1. A total of 165,523,363 MMTLP shares were officially recognized to exist in the market

---

[1] See SEC.gov archive:
https://www.sec.gov/Archives/edgar/data/1431959/000119312521203407/d189140dex991.htm#:~:text=Comme ncing%20on%20June%2028%2C%202021,the%20ticker%20symbol%20%E2%80%9CMMAT.%E2%80%9D

[2] See Meta Materials Press Release: https://metamaterial.com/meta-materials-inc-board-of-directors-approves-planned-completion-of-the-spin-off-of-next-bridge-hydrocarbons-inc/

according to registration statement S-1 form filed with the SEC[3]. On December 6, 2022, FINRA issued a Corporate Action[4] stating that shareholders had until December 12, 2022 to settle their MMTLP positions, and December 13, 2022 is the date that MMTLP will be cancelled.[5] This was posted in FINRA Daily List publication on its own website, which is a Company-Related Action that facilitates the orderly trading and settlement of OTC Equity Securities.

11.    On December 8, 2022, FINRA revised the same notice to say that MMTLP will be deleted (instead of cancelled) on December 13, 2022. Either way, many investors, including Plaintiff, relied on this notice to believe that there was time to sell or trade MMTLP before the 13th of December.

12.    However, without any prior notice or warning, FINRA issued a U3 halt on the morning of December 9, 2022.[6] The notice for the halt mentioned extraordinary event has occurred, but did not go into a specific reason or detail as

---

[3] See SEC.gov S-1 Statement:
https://www.sec.gov/Archives/edgar/data/1936756/000119312522257967/d302576ds1a.htm

[4] Federal securities regulations task FINRA with processing corporate action announcement requests by companies that trade in the over-the-counter (OTC) marketplace rather than on a national securities exchange:
https://www.finra.org/investors/insights/corporate-actions-public-companies-what-you-should-know

[5] See Exhibit B: FINRA's Daily List Notice

[6] See Exhibit E: FINRA Halt Notice: (U-3 Halt has been issued a total of 344 times since 2014, and only 3 times ever on domestic stocks).

to what this extraordinary event was. In the same notice, it mentioned that the halt would continue until the symbol was deleted on December 13, 2022.

13.     As of April 17, 2023, the halt still exists to this day, which has been more than four months. MMTLP still has not been deleted[7], and to Plaintiff's knowledge, shareholders have not received a single share of actual NextBridge shares. Instead, Plaintiff and other shareholders received a placeholder CUSIP of random numbers, valued at 0, that is still reflected in Plaintiff's account today. These CUSIP placeholders vary from brokerages to other brokerages and hold no actual value, and does not represent shares in an actual company. The MMTLP shares that Plaintiff held were effectively replaced with these worthless assets against the will of Plaintiff and other shareholders.

14.     Plaintiff also believes that there were excessive short positions for MMTLP that Defendants acted in collusion to prevent the reconciliation of those positions held by Market Makers and Brokerages at the expense of the shareholders. It is common knowledge that all short positions must be closed when a public company spins off into a private one. On December 8th, the final trading

---

[7] The ticker symbol was deleted and backdated, but Plaintiff believes MMTLP is still within the systems of Defendants.

day before trading was paused by FINRA, MMTLP dropped in value from $10 to $2.90, which is an extreme price drop and sale volume. However, Fidelity's retail report showed that approximately 90% of its retail users were purchasing MMTLP rather than selling it on the last two trading days.[8] This implied that while retail investors were busy buying, systematic short selling was happening. Data reports from FINRA's own website shows that this last day had approximately 9.5 million in short volume in a day that had 13,693,421 total volume.[9] Even if it is assumed that 100% of the buying on this day were not new buys (which is most likely not true), the fact that short position sales were 9.5 million, and the previous day already had 6.5 million open short positions, it can be conservatively estimated that there are about 11 million open short positions that were never closed. This number only includes reported short positions and does not include naked short positions, which Plaintiff believes that this would bring the actual number much higher. In fact, on February 6, 2023, the CEO of OTC Markets, Cromwell Coulson, tweeted from his verified account (which now deleted) that "There was a short position in $MMTLP," and confirmed that short position holders were effectively

---

[8] *See* Fidelity Report: Exhibit I

[9] *See* FINRA Short Sale Volume Data: Exhibit J

stuck because these positions were never closed, and suggested that NextBridge shares should become publicly tradeable in order to resolve this dilemma.[10] This effectively implied that Market Makers, and bad faith actors in collaboration with broker dealers, have an incentive to conclude this matter by pushing a private company to go public in order to resume trading, but by promoting 'public trading' rather than settling unresolved short & long positions, would like another opportunity to short this security into the ground and absolve themselves of any responsibilities to settle millions of open short positions at the expense of shareholders. Plaintiff believes that the exact number of open short positions on MMTLP will be easily confirmed with a court-ordered discovery request on Defendants.

15.     On December 7, 2022, Jeff Mendl, vice president of OTC markets, publicly stated that MMTLP trading will happen for December 9 and December 12, 2022 through a media interview hosted by Trader TV. Everyone expected there to be last two days of trading, but it was abruptly halted, without warning, by FINRA, and E-Trade was complicit in complying with such reckless action.

---

[10] See Exhibit A, also see https://twitter.com/cromwellc/status/1622648343275896847;
http://twitter.com/cromwellc/status/1622648357561696260;

16.     Dave Lauer, current FINRA Market Regulation Committee member, publicly stated on social media with his verified account that (in reference to MMTLP) "I think that FINRA has really screwed up this entire situation, and the lack of transparency has been egregious. This is not ok...they need to explain exactly what happened & what the full share count or audit shows, even if under investigation. If the books are reconciled, that needs to be shown – if they're not, then it needs to happen."

17.     Under the original plan, MMTLP was meant to dissolve into NextBridge, and any shareholders of MMTLP were supposed to receive one (1) NextBridge share for every one (1) MMTLP share that they held, and MMTLP was supposed to be deleted. FINRA issued MMTLP a "D1" issuance to delete the symbol after two months, and backdated to December 13, 2022 even though the actual ticker deletion happened on February 16, 2023.[11] In fact, FINRA blames the delay of the official deletion of the ticker symbol on a "coding issue," but does not explain what this specific technical issue is, nor does it explain how it could only miraculously happen to MMTLP's ticker symbol and not any of the thousands of

---

[11] https://finra.org/sites/default/files/OTCE_Daily_List_User_Guide.pdf Page 11 code definition D1 – Security deleted from OTCE

others.[12] Additionally, Plaintiff alleges that although the ticker symbol is deleted,

he believes that this is a just a façade and Defendant holds the ability to revert the

ticker symbol deletion because MMTLP still is not truly deleted.

18.     In reality, MMTLP cannot be deleted because there are still open short

positions, and a private company cannot carry open positions from a public market.

As to why these short positions are not able to be reconciled is a question for the

Honorable Court to ask if it chooses to do so, because it is the Defendants'

responsibility to reconcile, and have access to detailed nonpublic information that

Plaintiff and the other shareholders do not. Plaintiff firmly believes that MMTLP

short positions are not reconciled because it is *unable* to do so, due to the fact that

there are more short positions open than there are existing shares available on the

market. Additionally, Plaintiff believes that Defendants are not willing to reconcile

the short positions because they will have to buy back the shares from a group of

frustrated retail shareholders who are quoting prices such as several thousand

dollars per share on social media platforms, costing broker dealers such as E-Trade

---

[12] *See* Finra FAQ: https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-halt#:~:text=FINRA's%20corporate%20action%20notice%20also,14%2C%202022%2C%20distribution%20date%20o
f

and bad faith actors with short positions millions, if not hundreds of millions of dollars, to close out all existing short positions.

19.    To Plaintiff's knowledge, none of the MMTLP shareholders have yet to receive a *legitimate* NextBridge share to this day[13], one hundred plus days plus after FINRA issued a U-3 halt, because MMTLP has not been effectively closed out. It is of Plaintiff's opinion that retail investors, including Plaintiff, should not be paying for the mistakes and greed of Market Makers and bad faith actors who participated in institutional shorting of MMTLP with the aid of Defendants. To add insult to injury, Defendants terminated Plaintiff's right to decide if whether he wanted to go into NextBridge shares or to sell MMTLP without his consent.

20.    Naked short selling is a practice of selling short a stock or other tradeable security without first borrowing the shares to sell, or arranging to borrow them. It is an illegal practice prohibited and enforced by the SEC. Therefore, when a naked short sale happens, someone is selling something that they don't have by means of an illegal act. When there is a "failure to deliver" ("FTD") to the buyer,

---

[13] Plaintiff strongly believes that any and all Nextbridge Hydrocarbon share issued to a select few shareholders are not legitimate shares backed by an actual paper certificate

which is governed by FINRA Rule 4320,[14] it is implied that there is naked shorting

taking place, although it does not necessarily have to be the case. Under this rule, if

the market participant of the clearing agency fails to close out the position within

13 consecutive settlement days, the market participant needs to close out the

position by purchasing the shares that were shorted, or securities of like kind and

quantity. FINRA's own website showed that MMTLP was on its list for 41

consecutive days.[15] On SEC's database, MMTLP had 215,238 FTDs as well as

Meta's MMAT stock having over 3 million FTDs.[16] Because this information is

very difficult to access for the public, Defendants will be able to verify more

details through discovery. Plaintiff believes that that there was naked short selling

taking place that artificially depressed the price of MMTLP, especially on

---

[14] See FINRA Rule 4320: https://www.finra.org/rules-guidance/rulebooks/finra-rules/4320#:~:text=(a)%20If%20a%20participant%20of,securities%20of%20like%20kind%20and

[15] *See* Exhibit C, also see FINRA OTC Threshold Securities List, search date range 10/14/2022 – 12/12/2022: https://otce.finra.org/otce/otcThreshold; FINRA claims, in its FAQ: MMTLP Corporate Action and Trading Halt, that MMTLP was not supposed to be on its Threshold Securities List but was on it due to a unspecified and vague "Coding Issue." However, the duration of time MMTLP was on the Thresholds Securities List leads one to believe that this was not a Coding Issue. https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-halt#:~:text=FINRA's%20corporate%20action%20notice%20also,14%2C%202022%2C%20distribution%20date%20of

[16] *See* Exhibit D.

December 8, 2022. Because Defendants are not willing to disclose any of this
information, Plaintiff requests for transparency through court-ordered action.

21.     Plaintiff alleges that Defendants allowed MMTLP to be shorted for
their own benefit and profits. FINRA, as a regulatory body, and broker dealers,
such as E-Trade, has had a history of incestuous relationship where one employee
often leaves employment from one to the other. This is alarming because one is in
the role of overseeing the other, but personal connections and job history
intertwined creates a legitimate conflict of interest. In this respect, Plaintiff
believes that FINRA was incentivized to carry out the U-3 halt on December 9,
2022, to aid Defendant and other bad faith actors in order to short MMTLP to the
ground without worrying about closing the short positions, at the very expense of
shareholders such as Plaintiff, and thereby violating securities law.

22.     E-Trade, as the broker dealer, marked and represented to Plaintiff that
it was selling legitimate and authentic shares of MMTLP. Not only did Defendant
have knowledge that naked shorting was taking place, Defendant also aided in
selling counterfeit shares to many investors, and allowed its platform to be utilized
for naked short selling. Defendant lent out MMTLP shares belonging to many
investors, including Plaintiff's, without consent, which was then used to create
further short positions to further lower prices to assist the bad faith actors who

were actively naked shorting MMTLP. Back in December 2022, when Plaintiff had

no knowledge that this was happening, Plaintiff relied on Defendant's false

representation to purchase MMTLP on multiple occasions. Defendant acted in a

manner that was directly harmful to the interests of its retail clients, such as

Plaintiff, by halting trade abruptly, meanwhile allowing covert market activity to

take place directly on its platform. Even if Defendant denies having knowledge of

these claims, E-Trade, with its massive presence and significant years in business,

should have known that its actions would directly harm its retail investors.

23.    It is estimated that there are around 64,000 MMTLP investors[17], many

of whom are your average middle-class Americans, including Plaintiff, that have

been severely harmed by this MMTLP fiasco, and Plaintiff implores this

Honorable Court for immediate relief.

24.    There has been inquiries for answers and transparency by Congress to

Defendant regarding MMTLP, as evidenced by official letter.[18]

25.    To this day, Defendants have not explained (1) what the

"extraordinary event" is, that FINRA posted at its Halt Notice Announcement; (2)

---

[17] This number was derived from NextBridge Hydrocarbon's Prospectus filed with the SEC:
https://www.sec.gov/Archives/edgar/data/1936756/000119312522292114/d302576d424b4.htm

[18] *See* Exhibit H

why Plaintiff and almost every MMTLP shareholder still has a random CUSIP placeholder instead of authentic NextBridge shares four months after the spin-off; (3) the existing short positions that are still not reconciled and what the Defendants will do to reconcile them; or (4) any resolution or any communication to MMTLP shareholders who are currently frozen out of their shares and money.

26.    Plaintiff claims he is entitled to legal fees and expenses and requests that the Court order the same. Due to the severity of the issue at hand, and malicious nature of the acts by the Defendants, Plaintiff is entitled to an award of punitive damages. In addition, Plaintiff asks for monetary damages from Defendant E-Trade, while asking for an injunction from Defendant FINRA to return to shareholders the two full trading days that were taken away, under the condition that all open short and long positions to be closed and reconciled upon doing so. Although Defendants may argue otherwise, Defendants have the ability in their respective systems to reinstate MMTLP by removing the random CUSIP identification numbers. The reinstatement of two full trading days for MMTLP without trading restrictions, where the numerous short positions would be forced to close, would bring immediate relief to Plaintiff and justice for all MMTLP shareholders. In addition, Plaintiff requests that Court order Defendants an accounting of all actual, short sale, borrowed, loaned and any and all forms of

MMTLP shares, as well as all existing open positions that have not been reconciled.

## CAUSES OF ACTION

## (a). VIOLATIONS OF SECTION 10(b) AND 10(b)-5 OF THE SECURITIES EXCHANGE ACT

27.    Plaintiff hereby incorporates and re-alleges paragraph 1-26 as if fully set forth herein.

28.    Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") prohibits "to engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person." *See* 17 C.F.R. § 240.10b-5. Defendants allowed investors to believe that trading would continue until end of day December 12, 2022, but pulled the plug on trading two days before this date via the U-3 halt. This is contrary to the prospectus that was approved by the SEC.

29.    To establish liability under Section 10(b), the following points must be proven: (a) the Defendant made a material misstatement or omission; (b) the misstatement or omission was made with an intent to deceive, manipulate, or defraud; (c) there is connection between the misrepresentation or omission and the Plaintiff's purchase or sale of a security; (d) the Plaintiff relied on the misstatement

or omission; (e) the Plaintiff suffered economic loss; and (f) there is a casual

connection between the material misrepresentation or omission and the Plaintiff's

loss. *See* Dura Pharms, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

30.    FINRA made a material misstatement when it released the December

6, 2022 Daily Notice regarding MMTLP's final trading date. E-Trade made a

material omission when it did not alert its clients, including Plaintiff, that contrary

to the December 6, 2022 Daily Notice, it had plans to halt trading on December 9

by accepting FINRA's request. In fact, U.S. Supreme Court has explained that, as a

broker who has a fiduciary duty to its clients, "silence in connection with the

purchase or sale of securities may operate as a fraud actionable under 10(b) when

there is a duty to disclose arising from a relationship of trust and confidence

between parties to a transaction." *See* Chiarella v. United States, 445 U.S. 222, 230

(1980); *see also* SEC v. Zandford, 535 U.S. 813, 823 (2002).

31.    The misstatement and omission were made from Defendants with an

intent to defraud MMTLP shareholders. Many shareholders, who were nervous

about holding the security till its last closing day before spin-off felt relieved that

there was finally some communication, direction, and guidance from an official

source. To evidence this, price of MMTLP almost doubled immediately from

$5.04 to $9.50 within the same day following the immediate news. By entrapping

more shareholders and retail investors and shorting the security at a higher price,

Defendants stood to gain whether from its own financial profits or from actively

assisting the bad faith actors who were shorting this security. Defendant basically

argues that the reason for its halt was its *concern* for buyers purchasing MMTLP

without buyers realizing that it needed T+2 to clear, and buyers would not receive

MMTLP shares before they were cancelled, nor would they be recorded to be

eligible to receive NextBridge shares.[19] However, Defendant's words are

contradictory to Defendant's actions. Defendant's decision to wait until December

9th to halt trading, without notice and contradicting its December 6th

announcement, rather than issuing a corporate action announcement or providing

an advanced notice that it will halt trading, shows Defendant's wanton disregard, at

best, or fraudulent at worst, for both buyers and existing shareholders because

Defendant effectively trapped everyone, and MMTLP investors' money is now

frozen in limbo. Additionally, instead of halting the trade and screwing over

everyone in the process, Defendants could've issued a disclaimer or warning

message when purchasing the share to warn purchasers that there was imminent

---

[19] FINRA issued a statement saying that they issued a U-3 halt because they needed time to clear the trades for settlement T+2, see https://www.finra.org/investors/insights/FAQ-MMTLP-corporate-action-and-trading-halt

likelihood that there would be clearing issues. Defendants also could've had a

"close only" market as an alternative but chose not to do so, when many other

Broker-dealers were getting ready to do so.[20]

32.     FINRA's justification on why they had to halt the trading two days in

advance is a complete fabrication,[21] because (a) Defendant had numerous months

in advance to know, or should have known, that MMTLP will cease to trade in the

open market; and (b) Defendant's U-3 halt, which was extraordinarily rare in

nature, was not utilized for other domestic stocks that also spun off into a private

stock; and (c) the convenient "coding issue" cited by Defendant for their system

strangely has no other stocks that it affected except solely for MMTLP exactly at

this specific interval of timing. By acting against its own previous announcement,

Defendant actively defrauded MMTLP shareholders who were waiting till the last

hours of market activity to wait for the short squeeze.

33.     This Court has stated that severe recklessness satisfies the scienter

requirement. McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir

1989) (citing Woods v. Barnett Bank of Fort Lauderdale, 765 F.2d 1004, 1010

---

[20] *See* Exhibit G

[21] *See* FINRA FAQ, *supra*

(11th Cir. 1985)). It went out to explain, "Severe reckless is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." Defendant must have known that, its announcement on December 6 specifying that last date of trading would be December 12 would likely mislead buyers and current shareholders into believing December 12 would be the last date to sell.

34.     Plaintiff purchased more MMTLP after December 8's notice, which shows Plaintiff relied on the misstatement and omission. In fact, Plaintiff alleges that he would have sold the security earlier, due to uncertainty, if such notice was not put out.

35.     Plaintiff suffered actual economic loss, even if speculation is ignored that this security could have fetched extremely high prices via 'short squeeze.'[22]

---

[22] Short squeeze, is defined as "a situation in which the price of a stock rises to such an extent that investors who have sold short purchase the stock in order to limit their losses, causing the price to rise further." Source: Oxford Languages

36.    There is obvious and undoubted connection between the material misrepresentation or omission and Plaintiff's loss.

### (b). PRELIMINARY INJUNCTION

37.    Plaintiff hereby incorporates and re-alleges paragraphs 1-36 as if fully set forth herein.

38.    "Universal test of jurisdiction to issue injunctions is absence of legal remedy by which the complainant might obtain the full relief to which the facts and circumstances entitle the complainant" Chadwick v. Dolinoff, 207 Ga. 702 (1951). Without a court-ordered injunction, Plaintiff alleges that he has no authority to obtain relief from a SRO such as Defendant due to the legal constraints that are designed in place to protect SROs from private suits.

39.    Plaintiff is aware that Injunction is not a proper remedy against completed acts, *See* Sandt v. Mason, 208 Ga. 541 (1951), however, Plaintiff fully believes that seeing how an overwhelming majority of MMTLP shareholders, including Plaintiff, are held in limbo, without access to their funds and without having received a proper NextBridge share, that there has been no completion.

40.    Plaintiff's burden for establishing the right to preliminary injunctive relief are: (a) the likelihood of irreparable harm; (b) the substantial likelihood of success on the merits; (c) the balance of equities tips in his favor; and (d) that an

injunction is in the public interest. *See* <u>Winter v. Nat Res. Def. Council, Inc.</u>, 555

U.S. 7, 20 (2008).

41.     Plaintiff has likelihood of irreparable harm because, MMTLP has

been halted trading with no resolution, and Plaintiff has completely lost out all

monies invested in MMTLP due to this halt. Plaintiff and other investors have not

been given NextBridge shares and are simply held in limbo, after more than 100

days since the halt on December 9, 2022. Plaintiff and others have been robbed of

their two full trading days, which likely would have resulted in a short squeeze,

and were robbed of their rights to whether to even choose to move to NextBridge.

42.     Plaintiff has a substantial likelihood of success on the merits because

there are obvious damages that can easily be seen as directly stemming from

Defendants actions, and the type of behavior demonstrated from Defendants is

illegal in nature. Not only do Defendants show bad faith behavior, but there is

ample evidence referenced in this Complaint to show a higher bar that Defendants'

actions were intentional rather than reckless.

43.     In assessment of balancing the equities, Plaintiff believes that he will

suffer harm if this injunction is not issued against FINRA. Courts generally hold

that the party being enjoined do not suffer harm from being forced to stop

engaging in illegal conduct, to which Plaintiff alleges that Defendants have and are continuing to engage.

44.   There is strong public interest for issuing this injunction, not only among MMTLP shareholders who have lost their livelihoods and financial savings through Defendants' misconduct, but also for the integrity of the entire U.S. stock market. Once the public realizes that an SRO is protecting bad faith actors who are utilizing counterfeit shares to actively short stocks, and no injunction or legal remedy can reach them, then the trust and people's willingness to participate in the U.S. stock market will be broken and it will result in long-term consequences. State of Georgia also has an interest in transparency of private corporations and SROs, and has an interest to protect retail investors from fraudulent behavior of broker dealers and SROs.

### (c). FRAUD

45.   Plaintiff hereby incorporates and re-alleges paragraphs 1-44 as if fully set forth herein.

46.   Under Georgia law, Plaintiff alleges that Defendants were engaged in fraud. *See* GA Code § 23-2-51 (2020).

47.     Any misrepresentation intended to deceive and which does deceive is a fraud, for which a party is entitled to a remedy at law. *See* <u>Oliver v. O'Kelley</u>, 48 Ga. App 762 (1934).

48.     The five elements of fraud and deceit in Georgia are: (1) false representation made by the Defendant; (2) scienter; (3) an intention to induce the Plaintiff to act or refrain from acting in reliance by the Plaintiff; (4) justifiable reliance by the Plaintiff; (5) damage to the Plaintiff. *See* <u>Eastern Motors Co. v. Lavender</u>, 69 Ga. App. 48 (Ga. Ct. App. 1943).

49.     To allege fraud, the claimant must content the Defendant knowingly made a false representation with the intent and purpose of deceiving the Plaintiff. Additionally, there must be a reliance on such representations and a loss sustained thereby. *See* <u>Cone Mills Corp. v. A.G. Estes, Inc.</u>, 377 F.Supp. 222 (N.D. Ga. 1974).

50.     Plaintiff predicts that Defendant FINRA will argue that its SRO status will provide quasi-governmental immunity to the claims in this Complaint from the Exchange Act. Federal courts have long recognized the doctrine of absolute immunity when a national securities association or SROs is acting within its regulatory capacity. *See* <u>Sparta Surgical Corp v. NASD, Inc.</u>, 159 F.3d 1209 (9th Cir. 1998); *see also* <u>D'Alessio v. NYSE, Inc.</u>, 258 F.3d 93, 104 (2nd Cir. 2001)

(NYSE is "immune from liability for claims arising out of the discharge of its duties under the Exchange Act.").

51.     However, Plaintiff argues that Defendant FINRA's fraudulent behavior is outside the scope of regulatory capacity that what legislators had in mind when implementing the Exchange Act and providing immunity to SROs. In fact, this very eleventh circuit court had ruled that piercing the SRO veil of absolute immunity is valid under a fraud exception of the Exchange Act in the landmark case of Weissman. *See* <u>Weissman v. NASD</u>, 468 F.3d 1306 (11th Cir. 2006). Additionally, this court had ruled that when an SRO is "performing duties that pertain to the exercise of those private franchises, powers, and privileges which belong to them for their own corporate benefit," the SRO, like a for-profit corporation, will not be entitled to immunity. *See* Id.

52.     Defendant FINRA has recently argued, in a similar case involving MMTLP,[23] that FINRA's actions were within the regulatory scope, because all it did was (a) assign the MMTLP trading symbol, (b) review and issue the Meta / NextBridge Corporate Action, and (c) halt trading of MMTLP. In its Motion to

---

[23] *See* <u>Richard Hofman v. Fidelity Brokerage Services LLC,</u> No. 2:23-CV-00881 (C.D. Cal. 2023).

Dismiss, Defendant FINRA claims that it was not involved in anything outside of these three actions and absolves itself of all liability and blame. *See* Id.

53.     Plaintiff alleges that this is completely false. Defendant FINRA attempts to deflect the blame by stating in its FAQ,[24] that investors who did not sell by December 8 would receive NextBridge shares anyway even if it did not proceed to halt the trade. However, many investors, including Plaintiff, did not sell *precisely* because of Defendant's December 6 Corporate Action Notice that assured all shareholders that they had until December 12, and as a result, likely would not have waited until December 8 to sell. Therefore, there was misrepresentation from Defendant that led to this event.

54.     In addition, Defendant carelessly admits that short positions were indeed not closed out in its own FAQ.[25] One could reasonable infer that this is what they meant when they created an entire section dedicated to "what happens if short positions in MMTLP were not closed out before FINRA halted trading"? In this section, Defendant goes on to place the blame on Broker-dealers for not closing such short positions, when in fact, FINRA ironically has the role of

---

[24]*See* FINRA FAQ, *Supra*.

[25] Id.

providing guidance to Broker-dealers, and overseeing them. Effectively, both Defendants have allowed short positions to be created in a private company[26], which violates Securities law.

55.     FINRA explains its halt because it had made a determination that "an extraordinary event has occurred or is ongoing that has had a material effect on the market for the security or has caused or has the potential to cause major disruption to the marketplace or significant uncertainty in the settlement and clearance process."[27] Although it does not go into specifics about what this major disruption is, there is direct evidence from FINRA's internal e-mails which showed that Defendant was already reviewing the Blue Sheets[28] for MMTLP and MMAT on December 5, 2022.[29] However, the other internal e-mail shows that FINRA knew

---

[26] NextBridge Hydrocarbons is an independent public-reporting private company according to its prospectus. Prospectus, *Supra.*

[27] *See* FINRA FAQ, *Supra*

[28] Blue sheets are formal requests for information sent out by the SEC to market makers, broker-dealers, and/or clearinghouses. Blue sheets ask for information related to specific securities or transactions – especially those that may have affected the price of the security. Blue sheets are often requested in order to determine if there has been any illegal activity or to determine why a certain security experiences a large level of volatility.

[29] *See* Exhibit F – FINRA's Vice President of National Cause and Financial Crime Detections Programs and Head of Market Fraud's direct internal e-mail retrieved from an official FOIA request that has now been released to the public.

about MMTLP more than a year ago.[30] This meant that MMTLP was on FINRA's radar, but Defendant, for some reason, did not take action to remedy the situation for a long time. As short positions piled up from naked shorting, FINRA recognized the magnitude of the problem but ultimately decided to halt trading on the last two days before closure (instead of earlier), effectively shielding market makers, hedge funds, and any other third party who were illegally or legally shorting from having to close their positions and pay back whatever they owed. To make matters worse, the price movement of MMTLP on December 8, 2022 dropped from $10 to $2.90 while going through significant short volume, and significant new short positions were created just three days before short positions were forced to be closed (or so the public assumed), which clearly implies that that Broker-dealers like E-Trade, hedge funds, and other third party actors were tipped off by FINRA that a trading halt was coming.

56.    In essence, FINRA aided bad faith actors such as E-Trade and other parties to actively short MMTLP to the ground with counterfeit shares by: (a) not providing notice of its halt and contradicting its own Corporate Notice announcement; and (b) by tipping off the insiders and bad faith actors that such

---

[30] Id.

halt was coming; and (c) not requiring short positions to be closed in a spin-off to a private company; and (d) suspiciously waiting over a year to address the fraudulent activity around MMTLP until the very last two days; and (e) disregarding a different solution to close the short positions rather than halting trade altogether (e.g. open trading to close positions only). Just one of these items may raise questions alone, but Plaintiff believes that the full collection of Defendant's actions, misrepresentation, and omissions is more than substantial enough to bring forth this claim and show the Court that Defendants had scienter, an intention to defraud and to induce Plaintiff and other shareholders to rely on Defendant's actions.

57.    Plaintiff believes that all these actions were outside Defendant's regulatory duty and thus, disqualifies FINRA from its immunity.

## **MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

COMES NOW, Plaintiff JAE HYUN PARK and hereby moves this Court pursuant to Securities Exchange Act of 1934 and 65, Fed. R. Civ. P., for a preliminary injunction enjoining FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., and officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from violations of Securities Laws and from acts of further conspiracy to commit fraud, scheme, device to defraud all retail investors of Preferred A share dividend ("MMTLP") of Metal Materials, Inc. and in support thereof state the following:

58.     Plaintiff hereby incorporates and alleges paragraphs 1-57 as if fully set forth herein.

59.     Defendants' actions have caused injustice to Plaintiff and all MMTLP retail investors. Plaintiff is requesting that FINRA return the two full trading days for MMTLP by (1) forcing all Broker-dealers who have open positions in MMTLP to participate; (2) by unpausing the halt and reverting the deletion of MMTLP ticker symbol; (3) trading with close positions only.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief and respectfully requests this Court to enter Order(s) granting:

1. Awarding Plaintiff with damages from Defendant where applicable;

2. Awarding Plaintiff for punitive damages where applicable;

3. Defendant to restore MMTLP and return two full trading days where all open positions must be closed;

4. Defendants to fully disclose all accounting related to currently open positions and exact number of shares of MMTLP;

5. Awarding Plaintiff reasonable attorney's fees and costs pursuant to O.C.G.A. § 13-6-11, and other applicable laws; and

6. Any other relief that the Court deems as just and proper.

Dated: April 17, 2023                    Respectfully Submitted,


                                         By: _____

                                                    Jae H. Park
                                         Alabama Bar No. 1904F66K
                                                    *Pro Se* Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Georgia Local Rule 7.1D, the undersigned Plaintiff hereby certifies that the foregoing Complaint is a computer document prepared in Times New Roman 14-point font in accordance with Local Rule 5.1B.

By: Jae H. Park

## **VERIFICATION**

Under penalty of perjury, I affirm and declare that I have read the foregoing, and confirm that the facts alleged herein to be true and correct to the best of my knowledge and belief.

By: _____

Jae H. Park

SWORN AND SUBSCRIBED before me by means of [X] physical presence or [ ] online notarization this _17_ day of April 2023 by Jae Park, who is personally known to me or has produced a driver's license as identification.

_____
Notary Public

Print Name: J Stephen Dove

My Commission Expires: 2/2026

# Exhibit A
## Cromwell Coulson's Twitter Posts (now deleted)

9:59 PM Mon Feb 6 ••• 100%

7 7 12 6,002

**Cromwell Coulson** @cromwellc · 9h
FINRA is also the SRO that assigns, changes, and deletes symbols. It is @FINRA operational practice to delete a symbol when an issuer "cancels" security.

9 3 12 6,227

**Cromwell Coulson** @cromwellc · 9h
Sometimes, when a security holder has rights to future distributions or the distribution is not set, security will trade with a due bill. This was not the case.

5 3 12 6,649

**Cromwell Coulson** @cromwellc · 9h
Investors focused on having $MMTLP trade for a few more days after the ex-dividend date are focusing on the wrong thing, as the security interest was canceled and had no value.

27 16 24 11.4K

**Cromwell Coulson** @cromwellc · 9h
The ongoing question is how do short position holders resolve their liability for the Next Bridge common stock if it is not easily transferable or tradable publicly? I have no control or input on that. It would be easier if Next Bridge shares became publicly tradable.

244 83 69 50.3K

**Cromwell Coulson** @cromwellc · 9h
I will add to this thread if I can add a thoughtful perspective and questions are asked politely.

78 9 43 11K

**Cromwell Coulson** @cromwellc · 7h
To address confusion on how did $MMTLP become quoted OTC Pink. On 10/06/21 @FINRA assigned the symbol to security. On 10/07/21, Unsolicited quotes started in the security on the OTC Pink market. otcmarkets.com/glossary#unsol...

Tweet your reply



Exhibit B
FINRA's Daily List Notice

## Daily List Events                                                                    ✕

### Summary

| Date/Time | Event Type | Eff/Ex Date/Time | Symbol | Issue Name | Market |
|---|---|---|---|---|---|
| 12/06/2022 14:53:29 | Exchanged | 12/13/2022 00:00:00 | MMTLP | META MATLS INC PFD SER A | OTC Equity |

### Comments

MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22.

### Details

| | Current Value |
|---|---|
| Daily List Date/Time | 12/06/2022 14:53:29 |
| Event Type | Exchanged |
| Effective/Ex Date/Time | 12/13/2022 00:00:00 |
| Symbol | MMTLP |
| Issue Name | META MATLS INC PFD SER A |
| Class | |
| Market Category | OTC Equity |
| Offering Type | No Restrictions |
| Daily List Comment | MMTLP shareholders with settled positions as of 12/12/22 Record Date will receive one (1) share of Next Bridge Hydrocarbons, Inc. for every one (1) share of MMTLP held on Pay Date of 12/14/22. Purchases of MMTLP executed after 12/8/22 will not receive the distribution. Will not be quoted Ex. MMTLP shares will be canceled effective 12/13/22. |

Exhibit C
FINRA OTC Security Threshold List

Exhibit D
FTD's on SEC Website

```
20221209|59064R109|MLAB|642|MESA LABORATORIES INC|177.76
20221209|590672101|MSB|490|MESABI TRUST CTF BEN INT.|18.36
20221209|590717104|MESO|2787|MESOBLAST LIMITED SPONSORED AD|3.21
20221209|59124U605|MTA|398|METALLA RTY & STREAM LTD COM N|5.24
20221209|59134N104|MMAT|3023624|META MATERIALS INC. COMMON STO|
1.83
20221209|59134N203|MMTLP|215238|META MATLS INC PFD SER A|2.90
20221209|591408109|GBCHF|3|METAVERSE CAP CORP (CANADA)|.
20221209|59151K108|MEOH|547|METHANEX CORP (F)|36.57
20221209|591520200|MEI|2599|METHODE ELECTRONICS INC COMMON|46.71
20221209|59156R504|METPRA|399|METLIFE INC PFD SERIES A FLOAT|
21.75
20221209|59156R850|METPRF|42|METLIFE INC DEPOSITARY SH REPS|20.25
```

Exhibit E
FINRA's December 9, 2022 Halt Notice



**Attn: Trading and Market Making/Legal and Compliance/Operations/Systems**
**UNIFORM PRACTICE ADVISORY (UPC # 35-22) 12/09/2022**

**Trading and Quotation Halt for META MATERIALS PFD SER A (MMTLP)**

Effective Friday, December 09, 2022, the Financial Industry Regulatory Authority, Inc. ("FINRA") halted trading and quoting in the Series A preferred shares of Meta Materials Inc. (OTC Symbol: MMTLP). Pursuant to Rule 6440(a)(3), FINRA has determined that an extraordinary event has occurred or is ongoing that has caused or has the potential to cause significant uncertainty in the settlement and clearance process for shares in MMTLP and that, therefore, halting trading and quoting in MMTLP is necessary to protect investors and the public interest.

The trading and quoting halt will end concurrent with the deletion of the symbol effective Tuesday, December 13, 2022. *See* updated FINRA Daily List announcement of December 8, 2022, regarding MMTLP; available here: https://otce.finra.org/otce/dailyList.

*See also* Form S1 Registration Statement for Next Bridge Hydrocarbons, Inc. stating that **"…immediately after the Spin-Off, all shares of Series A Non-Voting Preferred Stock of Meta shall be cancelled."** Available here: https://www.sec.gov/Archives/edgar/data/1936756/000119312522281275/d302576ds1a.htm.

Questions regarding this notice can be directed to: FINRA Market Operations at (866) 776-0800, Option 2.

Investor protection. Market integrity.

9509 Key West Avenue     t  240 386 4000
Rockville, MD            www.finra.org
20850-3329

Exhibit F
FINRA's Internal E-Mails

| | |
|---|---|
| **From:** | Boyle, Richard |
| **To:** | (b)(6); (b)(7)(C) |
| **Cc:** | Gibbon, Jay |
| **Subject:** | Meta Materials Inc. (MMAT and MMTLP) / Next Bridge Hydrocarbons, Inc. |
| **Date:** | Friday, December 2, 2022 10:46:34 AM |
| **Attachments:** | image001.png |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning (b)(6); (b)(7)(C) I believe you've had conversations with FINRA's OTC Corporate Actions team regarding the above issuer and its proposed spin-off transaction. Would one of you have time on Monday or Tuesday to discuss this matter? FINRA's Market Fraud Investigations team recently received several tips that appear to have also been sent to the SEC. Below are some proposed times to discuss but we can work around your schedules if these don't work for you. Thanks.

Monday – between 11:30 ET and 2:30 ET or between 4:30 ET and 5:30 ET
Tuesday – between 4:30 ET and 5:30 ET

**Rich Boyle**

National Cause and Financial Crimes Detection Programs | 15200 Omega Drive, Suite 210 | Rockville, MD  20850
Phone: (240) 386-5008 | richard.boyle@finra.org | www.finra.org



**From:** Draddy, Sam <Sam.Draddy@finra.org>
**Sent:** Monday, December 5, 2022 9:07 AM
**To:** (b)(6); (b)(7)(C)                @SEC.GOV>
**Cc:** (b)(6); (b)(7)(C)          @SEC.GOV>; (b)(6); (b)(7)(C)          @SEC.GOV>; Boyle,
Richard <Richard.Boyle@finra.org>; Gibbon, Jay <Jay.Gibbon@finra.org>
**Subject:** RE: Inquiry

> **CAUTION:** This email originated from outside of the organization. Do not click links or open
> attachments unless you recognize the sender and know the content is safe.

(b)(6);
(b)(7)(C)        --looks like this MMAT/MMTLP matter has now hit my Fraud team's radar screen (and
seemingly a lot of other radar screens as well). I know you have spoken to Patti Casimates and our
General Counsel's office—but was wondering if it made sense for my Fraud team to have a
conversation directly with you and your folks working on the matter so we are not duplicating
efforts.  We are looking at the two issuers from a fraud/manipulation angle and, in fact, bluesheeting
both MMAT and MMTLP as we speak.

If you think a comparison of notes is worth a quick call—let me know a good day/time.  I can set up a
zoom and feel free to let me know if (b)(6); (b)(7)(C)  or anyone else should be included.

Thanks (b)(6); (b)(7)(C)

Sam

Non Responsive Record

Non Responsive Record

**From:** Draddy, Sam <Sam.Draddy@finra.org>
**Sent:** Monday, November 29, 2021 5:03 PM
**To:** (b)(6); (b)(7)(C) @SEC.GOV>; (b)(6); (b)(7)(C) @SEC.GOV>
**Cc:** (b)(6); (b)(7)(C) @SEC.GOV>; Casimates, Patricia <Patricia.Casimates@finra.org>
**Subject:** RE: Inquiry

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

(b)(6); (b)(7)(C)—I believe it was Patti Casimates from our Market Ops group who reached out to (b)(6); (b)(7)(C) I have included her on the email so you can reach out to her directly. Hope all is well!

Sam

Non Responsive Record

Exhibit G



**TD Ameritrade**                                    Secured 🔒

Hello,

Thanks for the e-mail.

This is what we know at this point:

MMTLP shareholders as of record 12/12 will receive 1 share of Next Bridge Hydrocarbons for every share of MMTLP.

Purchases of MMTLP executed after 12/8 will not receive distribution.

Will not be quoted Ex.

FINRA verified it will be cancelled 12/13. (See below)

The stock will quote on OTC dealer on Friday 12/9 and Monday 12/12, but according to FINRA, anyone buying on those days will not receive distribution and the symbol will be cancelled effective 12/13.

We will be setting MMTLP to 'Closing Transactions Only' after close of trading tomorrow, 12/08, as purchasers after that point will not be entitled to shares of Next Bridge.

I hope the information helps.

Kind regards,

Pasquale R
**Trader Support, Trader Services**



## Regarding MMTLP Share Distribution   Inbox

**TradeZero America**   3:20 PM
to me

TradeZero Clients, Symbol MMTLP, Meta Materials, Inc. Preferred Share, will undergo a share spinoff with the ex date listed as Monday, December 12th, 2022. Due to the circumstances and uncertain component of this corporate action, all options positions and short equity positions must be liquidated by 4:00 PM eastern time on Friday, December 9th, 2022. If you fail to liquidate your position, TradeZero's risk department will automatically liquidate your position. If you have any questions please contact us at support@tradezero.us or 718-709-4925.

**QUICK ACCESS LINKS**

LOG IN          GUIDE

Exhibit H



**BILL POSEY**
8TH DISTRICT, FLORIDA

COMMITTEES
SCIENCE, SPACE, AND TECHNOLOGY
Space Subcommittee

FINANCIAL SERVICES
Consumer Protection and Financial
Institutions Subcommittee
Housing, Community Development, and
Insurance Subcommittee

Congressional Estuary Caucus Founder
House Aerospace Caucus Co-Chair
Republican Study Committee
Congressional Autism Caucus
Military Veterans Caucus

# Congress of the United States
## House of Representatives
### Washington, DC 20515

www.posey.house.gov
WASHINGTON OFFICE
2150 Rayburn House Office Building
Washington, DC 20515
(202) 225-3671
Fax: (202) 225-3516

MAIN DISTRICT OFFICE
2725 Judge Fran Jamieson Way, Bldg. C
Melbourne, FL 32940
(321) 632-1776
Fax: (321) 639-8595

DISTRICT OFFICE
Indian River County Admin. Bldg. A
(772) 226-1701

DISTRICT OFFICE
Brevard County Government Offices
in Titusville
(321) 383-6090

February 6, 2023

Ms. ████████████████

Dear Ms. ████████:

Thank you for your letter asking that the Senate Banking Committee and the House Financial Services Committee investigate circumstances surrounding FINRA's suspension of trading MMTLP stock and to take action to ensure that all investors are treated fairly in the stock market.

I have been hearing from constituents who share your concerns. While we have yet to be given evidence that anyone acted unlawfully or unscrupulously in this matter, I believe the regulatory agencies have an obligation to investigate this matter. Their minimum obligation is to assure retail investors that our equity markets are transparent and fair to their interests. I have urged FINRA to investigate and act on its findings. I sent the following letter to President Cook of FINRA. I have also let the leadership of the Financial Services Committee, where I am a member, know that retail investors must be ensured the markets are fair to their interests – free of any manipulation or organized trading against their interests. I will continue working to make this issue visible and urging the regulators to provide us with information we all need carry out our oversight and legislative responsibilities.

Dear Mr. Cook:

I continue to hear from constituents disappointed with FINRA's suspension of trading in MMTLP preferred stock on December 8, 2022.

These constituents are troubled by widespread reports of naked short selling, synthetic share creation, trading of the stock in dark pools, abuses of retail investors related to payment for order flow, and other perceived irregularities. Many believe that FINRA suspended trading in the stock to protect short sellers and prevent their having to cover their short positions by purchasing shares. These are positions that are also held by many investors who voice their views in online forums and in videos. I believe that FINRA should act to provide clarity and transparency to those who, like my constituents, believe that the market may have been manipulated by large traders to the detriment of small retail investors. FINRA actions can help assure these traders of the fairness and investor protections built into the exchanges. We must ensure that our securities markets give small, retail investors the confidence they need to participate in supplying our firms with capital.

Exhibit I
Fidelity Retail Report

# Customer orders

AS OF DEC-08-2022 12:01 PM ET

| Symbol | Buy/Sell Ratio | |
| --- | --- | --- |
| TSLA | Buy 66% | Sell 34% |
| TQQQ | Buy 44% | Sell 56% |
| AMZN | Buy 61% | Sell 39% |
| MMTLP | Buy 90% | Sell 10% |
| SQQQ | Buy 49% | Sell 51% |
| PHVS | Buy 51% | Sell 49% |
| AAPL | Buy 50% | Sell 50% |

Exhibit J
Short Volume from FINRA's Site (now deleted)

